UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Arthur J. Rouse, *et al.*,

               Plaintiffs,

v.

Michigan Parole Board, *et al.*,

               Defendants.

_____/

Case No. 21-cv-12670

Judith E. Levy
United States District Judge

Mag. Judge Kimberly G. Altman

**ORDER (1) SEVERING PLAINTIFF ARTHUR J. ROUSE'S CASE FROM THE REMAINING PLAINTIFFS, (2) DIRECTING PLAINTIFF ROUSE TO CORRECT FILING DEFICIENCY AND TO FILE AN AMENDED COMPLAINT, AND (4) STRIKING PLAINTIFFS' PENDING MOTIONS [2, 3, 4, 16]**

This is a prisoner civil rights case brought under 42 U.S.C. § 1983. Plaintiff Arthur J. Rouse identifies himself as the Lead Plaintiff, but the complaint lists approximately eighty other Michigan prisoners and parolees as additional Plaintiffs. (ECF No. 1, PageID.1, 3.) Plaintiffs collectively seek relief for twelve separate counts as listed in the complaint. (*Id.* at PageID.2.)

For the reasons set forth below, the Court severs Lead Plaintiff Rouse's case from the remaining Plaintiffs, and dismisses the other

Plaintiffs without prejudice so they can file separate complaints if they wish to proceed. The Court further orders Plaintiff Rouse to correct his filing deficiency of failing to properly apply to proceed *in forma pauperis* as well as to file an amended complaint that removes the other Plaintiffs' claims. Finally, the Court strikes Plaintiffs' pending motions, which are premised on the fact that all currently named Plaintiffs would be allowed to maintain a joint action. (ECF Nos. 2, 3, 4, 16.)

## I. Joint Complaint

Plaintiffs' complaint demonstrates an intent to seek relief jointly. The caption of the complaint[1] names eighty Michigan prisoners as Plaintiffs, and it indicates that there are an additional ninety-nine John and Jane Doe prisoner Plaintiffs to be named later. (ECF No. 1,

---

[1] Additionally, some errors are readily apparent in the complaint. For example, Plaintiff listed as number 13, Lonnie Welch, also appears as Plaintiff number 34. (ECF No. 1, PageID.3.) According to the Michigan Department of Corrections ("MDOC") website, the complaint misspells the last names of Plaintiff number 4, Charles McGlohen (correctly spelled McGlothen), and Plaintiff number 32 Gary Guyors (correctly spelled Guyor). (*Id*.) The complaint also lists the wrong MDOC prisoner numbers for Plaintiff numbers 5, 19, 25, 26, 27, and 30. (*Id*.) Further, though the complaint asserts that all Plaintiffs are prisoners at the Parnall Correctional Facility, at least Plaintiff number 4 appears to be a prisoner at the Gus Harrison Correctional Facility; Plaintiff number 19 appears to be a prisoner at the Central Michigan Correctional Facility; and Plaintiffs number 13 and 34 are on parole with the Berrien County Parole Office.

2

PageID.3.) For Defendants, the complaint alternatively[2] lists the Michigan Parole Board; the MDOC; the individual parole board members Brian Shipman, Edward Heap, Melissa Jennings, Richard Moore, Anthony King, Tim Flanagan, Sandra Wilson, Sonia A. Warchock, Jerome Warfield, Andrianne Langeveld, and Carolyn Burns (hereinafter collectively, the "Board Defendants"); MDOC Director Heidi Washington; the State of Michigan; Parnall Correctional Facility Warden Dave Shaver; and twenty-five John and Jane Does. (*Id.* at PageID.4.)

The complaint contains twelve counts. In count one, Plaintiff number 40, Walt Harrington, asserts that the Board Defendants violated (1) his constitutional rights under the First Amendment, Fifth Amendment, Sixth Amendment, and Fourteenth Amendment to the U.S. Constitution; (2) his rights pursuant to Article I, Section 17 of the

---

[2] The complaint is inconsistent in its inclusion of certain Defendants. For example, while the case caption does not include Defendant Parole Board Member Carolyn Burns (ECF No. 1, PageID.1), the complaint later lists Defendant Burns in the list of defendants. (*Id.* at PageID.4.) In contrast, while the caption lists Defendant Richard Moore as a defendant (*id.* at PageID.1), Defendant Moore is not later included in the list of defendants. (*Id.* at PageID.4.) Additionally, the complaint includes alternative spellings of certain Defendants' names, including "Andrianne Langeveld" (*id.* at PageID.1) and "Adrianne Van Langevelde" (*id.* at PageID.4). This Opinion and Order refers to Defendants using the spellings as used in the docket for this case (i.e., Case No. 21-12670 *Rouse et al. v. Michigan Parole Board et al.*).

3

Michigan Constitution; and (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, when they used his refusal to take responsibility for untried sexual misconduct charges as a reason for denying him parole. (*Id.* at PageID.9.)

Count two asserts that the Board Defendants and Defendant Michigan Parole Board violated Plaintiff Rouse's unspecified rights when they revoked a grant of parole based on his refusal to waive his Fifth Amendment rights and as retaliation against him for his federal lawsuits. (*Id.* at PageID.10.)

Count three asserts that the Board Defendants and Defendant Michigan Parole Board improperly used the existence of untried open charges as a basis for denying parole to Plaintiffs. (*Id.* at PageID.11.) This conduct is alleged to be in violation of (1) constitutional rights protected under the Sixth Amendment and Fourteenth Amendment to the U.S. Constitution; and (2) rights pursuant to Article I, Section 17; Article II, Section 2, and Article VI, Section 1 of the Michigan Constitution. (*Id.*)

Count four asserts that Defendants illegally require Plaintiffs to attend certain prison programs during which religious programs and

services are unavailable. (*Id.* at PageID.12.) Plaintiffs contend that this is a violation of the Fourteenth Amendment to the U.S. Constitution and is contrary to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.* (*Id.*)

Count five asserts that Defendants violated Plaintiff Rouse and similarly situated prisoners' rights under the Fourteenth Amendment to the U.S. Constitution by denying them access to the courts in the manner they administer certain required prison programs. (*Id.* at PageID.13.)

Count six asserts that Michigan parolees are unconstitutionally required to sign waivers of their Fourth Amendment rights as a condition of parole, contrary to protections under Article I, Section 11 of the Michigan Constitution. (*Id.* at PageID.14.)

Count seven asserts that Michigan parolees are constantly subjected to warrantless searches by the police and parole agents, and that the searches are racially discriminatory resulting in a higher arrest rate for minority parolees. (*Id.* at PageID.15.) Plaintiffs contend that this is a violation of the Fourteenth Amendment to the U.S. Constitution and is contrary to unspecified Michigan state laws. (*Id.*)

Count eight asserts that Plaintiff Rouse's parole was illegally revoked when he informed Defendants that he could not accept the unlawful conditions that required him to cease constitutionally protected conduct. (*Id.* at PageID.16.) Plaintiffs contend that this is a violation of the First and Fourteenth Amendments to the U.S. Constitution and the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202 *et seq*. (*Id.*)

Count nine asserts that the Board Defendants and Defendant Michigan Parole Board violated Plaintiffs' due process liberty interest rights by failing to grant parole though state law creates a presumption of release on parole. (*Id.* at PageID.17.)

Count ten asserts that the parole board violated Plaintiff Rouse and other Plaintiffs' rights by imposing conditions of parole that were not made a part of their original sentence, and that are not related to advancing the prisoners' rehabilitation. (*Id.* at PageID.18.) This conduct is alleged to be in violation of (1) constitutional rights protected under the Fourth and Fourteenth Amendments to the U.S. Constitution; and (2) rights pursuant to Article III, Section 2; and Article VI, Section 1 of the Michigan Constitution. (*Id.*)

Count eleven asserts that Defendants violated Plaintiffs' rights by not allowing them to attend group therapy until prisoners have already passed their earliest release date, thereby forcing prisoners to serve most of their sentence without receiving the rehabilitation services required by the MDOC. (*Id.* at PageID.19.) This conduct is alleged to be in violation of (1) constitutional rights protected under the Eighth Amendment to the U.S. Constitution; and (2) the ADA and the Rehabilitation Act. (*Id.*)

Finally, count twelve asserts that Defendants' policy of waiting for prisoners' earliest release date to pass before providing mental health services violates (1) the Eighth Amendment to the U.S. Constitution; (2) the ADA and the Rehabilitation Act; and (3) the ELCRA. (*Id.* at PageID.20.)

The complaint seeks the following relief: (1) an order directing the release of Plaintiffs Rouse and Harrington; (2) an order permitting prisoners to perform legal work and attend religious services while enrolled at certain prison programs; (3) an order prohibiting the warrantless search of Michigan parolees; (4) an award of $50,000.00 to Plaintiff Rouse; (5) a declaration that Michigan's parole law creates a

liberty interest for Michigan prisoners; and (6) an order compelling Defendants to provide rehabilitation services from the start of a Michigan prisoner's prison sentence. (*Id.* at PageID.22.)

## II. Analysis

### A. Dismissal of all Plaintiffs except Plaintiff Rouse

Plaintiff Rouse is the Lead Plaintiff and the person who drafted the complaint. The complaint makes specific allegations concerning Plaintiff Rouse's bid to be released on parole. Except for one count concerning Plaintiff number 40, Harrington, the rest of the complaint contains generalized allegations that Defendants are violating the rights of prisoners seeking to be rehabilitated in prison, imposing illegal conditions on prisoners seeking their release on parole, and otherwise violating the rights of Michigan parolees. The complaint also asserts that the allegations will apply to Jane and John Doe prisoners yet to be identified.

Normally, the joinder of claims, parties, and remedies is strongly encouraged when appropriate to further judicial economy and fairness. *See Crutcher v. Com. of Ky.*, 961 F.2d 1576 (6th Cir. 1992), citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724 (1966). Federal Rule

8

of Civil Procedure 20(a)(1), in fact, indicates: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

Notwithstanding Rule 20(a)(1), there are "pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even if it were otherwise allowed by Rule 20(a)." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 780 (E.D. Mich. 2009) (Borman, J.) (adopting the magistrate judge's report) (citing *Boretsky v. Corzine*, No. 2008 WL 2512916, *5 (D.N.J. June 23, 2008)). Some of the problems that often arise from multiple-plaintiff prisoner cases include the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation." *Id*. (quoting *Boretsky*, No. 2008 WL 2512916 at *5). Allowing multiple prisoner plaintiffs to proceed in a single action also "invites violations of [Federal]

Rule [of Civil Procedure] 11(a), which requires every pleading to be signed by all *pro se* plaintiffs." *Proctor*, 661 F. Supp. 2d at 780 (citing *Ghashiyah v. Frank*, No. 2008 WL 680203, *1 (E.D. Wis. March 10, 2008)). Multiple-plaintiff prisoner cases can also often lead to pleadings being filed on behalf of the other plaintiffs without their consent. *Id.*

An additional problem with multiple-plaintiff litigation in the prisoner context is that "jail populations are notably transitory, making joint litigation difficult." *Id.* (quoting *Boretsky*, No. 2008 WL 2512916 at *5); *see also White v. Tennessee Bd. of Probation and Paroles*, No. 2007 WL 1309402 (W.D. Tenn. May 3, 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in a single action."). Furthermore, other district courts have also recognized the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)." *Proctor*, 661 F. Supp. 2d at 780 (quoting *Boretsky*, No. 2008 WL 2512916 at *6) (additional citations omitted). Prisoners are simply "not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation

10

exceptionally difficult." *Id.* (quoting *Boretsky*, No. 2008 WL 2512916 at *6).

These concerns are present in this case. While it appears that Lead Plaintiff Rouse was able to gather the signatures of over eighty prisoners on the complaint, going forward the Court anticipates that it would be practically impossible for all the named Plaintiffs to continue to be able to sign pleadings, let alone meet to discuss and agree upon courses of action in the litigation. The Court notes that already several of the named Plaintiffs are located at different facilities, and at least one has been released on parole. The fact that incorrect names and prisoner numbers appear in the pleadings heightens the Court's concern that not all the named Plaintiffs were able to review the complaint before it was filed and may not be making informed decisions on how to proceed. Plaintiff Rouse is not a lawyer, and he is not bound by the same ethical obligations required of a licensed member of the bar. The use of incorrect prisoner numbers and addresses makes it unlikely that the named Plaintiffs will receive pleadings and orders filed in the case and increases the probability that Plaintiff Rouse would be making important decisions without the input or consent of other named Plaintiffs.

Furthermore, to the extent Plaintiff Rouse is attempting to personally handle this case as a class-action on behalf of many more dozen—if not all—prospective Michigan parolees, he is not equipped to do so. The Sixth Circuit has established that *pro se* litigants cannot adequately represent the interests of a class. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (collecting cases). Because Rouse (or any of the other original plaintiffs) is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Nor is the Court persuaded at this time based on the conclusory allegations of the complaint to appoint counsel to maintain such a class action. Accordingly, the Court exercises its discretion and prohibits the multiple *pro se* plaintiffs from joining their claims against the named Defendants in a single action.

Misjoinder of parties is not normally sufficient to dismiss an action in its entirety. *See Proctor*, 661 F. Supp. 2d at 781 (citing Fed. R. Civ. P. 21) (additional citations omitted). "Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately." *Jackson v. Swab*, 2018 WL 521457, at *3

12

(W.D. Mich. Jan. 23, 2018). "Because dismissal may have potentially adverse statute-of-limitation consequences, a district court's discretionary decision to remedy misjoinder by dropping or dismissing a party may be exercised only if just; a dismissal is just if it is without prejudice and the dismissed party will not lose the ability to prosecute an otherwise timely claim." *Bell v. Washington*, No. 21-10399, 2022 WL 830589, at *3 (E.D. Mich. Mar. 17, 2022)

  The Court concludes that the best option here is to sever Plaintiff Rouse's case from the other Plaintiffs' cases. The complaint was drafted by Plaintiff Rouse, and in it he largely provides specific factual allegations pertaining to his individual claims. The allegations with respect to the other Plaintiffs are in large part more generalized. By severing parties and dismissing the complaint without prejudice, the other individual Plaintiffs will be able to focus on their individual claims. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003). Accordingly, the Court dismisses all Plaintiffs from this action other than Plaintiff Rouse without prejudice to each Plaintiff filing their

13

own separate complaint. The dismissed Plaintiffs may file their own separate actions individually, paying the required filing fee in full or as dictated by 28 U.S.C. § 1915.

### B. Opportunity to File Amended Complaint

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within" "21 days after serving it[.]" Fed. R. Civ. P. 15(a)(1)(A). Otherwise, a party may only amend its pleading with the opposing party's written consent or leave of the Court, and "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court can allow an inmate to amend their complaint even when the original complaint is subject to dismissal under the Prison Litigation Reform Act's ("PLRA") screening requirements. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Because the complaint was drafted to state claims for all the named Plaintiffs, the Court grants Plaintiff Rouse thirty days from the date of this order to file an amended complaint which removes the now-dismissed Plaintiffs and alleges only those violations that pertain to him.

**C. Filing Deficiency**

Plaintiffs filed a motion for leave to proceed *in forma pauperis* (ECF No. 2), but it fails to satisfy the requirements of the PLRA. The PLRA states that "if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (as amended); *see also In Re Prison Litigation Reform Act,* 105 F.3d 1131, 1138 (6th Cir. 1997). However, to account for a prisoner's limited means, the PLRA permits prisoners to pay the filing fee in installments. *See Miller v. Campbell*, 108 F. Supp. 2d 960, 962 (W.D. Tenn. 2000); *Pointer v. Wilkinson*, 502 F.3d 369, 372 n.3 (6thCir. 2007) ("The PLRA requires prisoners who qualify for [*in forma pauperis*] status to pay an initial partial fee, followed by installment payments until the entire filing fee is paid.").

Under the PLRA, a prisoner seeking to bring a civil action *in forma pauperis* must file an affidavit of indigency and a certified copy of the prison trust fund account statement for the six-month period immediately preceding the filing of the complaint. *See Erby v. Kula,* 113 F. App'x 74, 75 (6th Cir. 2004) (citing 28 U.S.C. § 1915(a)). If the inmate does not pay the full filing fee and fails to provide the required

15

documents, the district court must notify the prisoner of the deficiency and grant them thirty days from the date of the deficiency order to correct it or pay the full fee. *See id.* at 75–76 (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997)).

Plaintiff Rouse is now notified of his *in forma pauperis* obligations. Within thirty days from the date of this order, Plaintiff Rouse must submit the $350.00 filing fee with the additional $52.00 administrative fee ($402.00 total) or, alternatively, file the required Prisoner's Application to Proceed Without Prepayment of Fees and Costs and Authorization to Withdraw from the Trust Fund Account, a current Certification/Business Manager's Account Statement, and a statement of Trust Fund Account (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint. *McGore*, 114 F.3d at 605. Should Plaintiff Rouse fail to pay the filing fee and the administrative fee, or fail to file the required documents as described, the Court will presume that he is not proceeding without prepayment of the fee, assess the entire fee, and order the case dismissed for want of prosecution. *Id*. If Plaintiff Rouse's action is dismissed under such

circumstances, it will not be reinstated even if he subsequently pays the fee. *Id.*

### D. Pending Motions

Finally, Plaintiffs have filed a motion for a three-judge panel (ECF No. 2), a motion for appointment of counsel (ECF No. 3), a motion for a temporary restraining order and preliminary injunction (ECF No. 4), and a motion to change Plaintiff Rouse's address and to remove the case from mediation. (ECF No. 16.) The Court will strike these motions because they are all premised on Plaintiffs maintaining a joint or class action. Should Plaintiff Rouse comply with the Court's order to file an amended complaint and correct his *in forma pauperis* deficiency, he may refile any motions he deems appropriate.

### III. Conclusion

For the reasons set forth above, the Court orders that:

1. Plaintiff Arthur Rouse's case is severed from the remaining Plaintiffs. The complaint is **DISMISSED WITHOUT PREJUDICE** with respect to the remaining Plaintiffs who may file individual complaints on their own behalf.

2. Plaintiff Rouse has thirty days from the date of this order to file an amended complaint which removes the remaining Plaintiffs and addresses only those allegations that pertain to him.

3. Plaintiff Rouse has thirty days to correct his filing deficiency by filing the filing fee and administrative fee or by filing an application for leave to proceed *in forma pauperis* in compliance with the PLRA.

4. The pending motions filed by Plaintiffs (ECF Nos. 2, 3, 4, 16) are **STRICKEN**.

IT IS SO ORDERED.

Dated: May 19, 2022       s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 19, 2022.

     s/William Barkholz
     WILLIAM BARKHOLZ
     Case Manager